UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JACKIE BARSHAK,<br><br>  Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL,<br><br>  Defendant. | Case No. 18-cv-00016-LB<br><br>**ORDER GRANTING PLAITIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 17, 26 |

## INTRODUCTION

The plaintiff Jackie Barshak seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying her claim for a waiver of overpayment under 20 C.F.R. § 416.550.[1] Under Civil Local Rule 16–5, the matter is deemed submitted for decision by this court without oral argument. All parties consented to magistrate-judge jurisdiction.[2] The court grants the plaintiff's motion for summary judgment and denies the Commissioner's cross-motion for summary judgment.

---

[1] Mot. – ECF No. 17 at 6–7. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Consent Forms – ECF Nos. 8, 9.

**STATEMENT**

**1. Background**

The plaintiff began receiving supplemental security income ("SSI") benefits in July 1999.[3] After she lost certain items stored in a storage facility due to the facility's negligence, the facility's insurers settled with her.[4] The plaintiff received two settlement payments: one in January 2009 for $7,849.23 and a second in October 2010 for $13,708.80.[5] Each of these payments put the plaintiff over the $2,000 asset limit for receiving SSI benefits, prompting the SSA to terminate her benefits.[6]

On January 25, 2011, the SSA issued a letter outlining the dates and amounts of overpayments made to the plaintiff as a result of her being over the asset limit.[7] On February 16, 2011, the SSA issued a notice informing the plaintiff that as a result of her excess resources, she was overpaid in the amount of $21,443 from January 1, 2009 to February 1, 2011.[8]

An SSA report shows that on February 25, 2011, the plaintiff went to the SSA office in San Francisco.[9] The plaintiff "said the money in her bank account should be excluded from resources but refuse[d] to tell [them] why it should be excluded and what the issue was . . . ."[10] The plaintiff said she "marked informal conference" on her waiver form but "never got an informal conference."[11]

---

[3] AR 278.

[4] *Id.*

[5] AR 232.

[6] Individual SSI beneficiaries are considered ineligible for benefits if they possess more than $2,000 in resources. 20 C.F.R. § 416.1205. The SSA excludes certain resources from being counted towards the $2,000. *See* 20 C.F.R. § 416.1210. A beneficiary who is given cash for the replacement of resources that are excluded from being counted is allowed a nine-month "grace-period" to spend down the excess resources. POMS 01130.630. The beneficiary may receive an additional nine-month extension if she shows good cause why repair or replacement was not possible during the first nine months. 20 C.F.R. § 416.1232.

[7] AR 87–117.

[8] AR 121–29.

[9] AR 229.

[10] *Id.*

[11] *Id.*

On April 12, 2011, the plaintiff formally requested a waiver of overpayment.[12] She said she disagreed with the amount of the overpayment and asserted that she was entitled to a nine-month grace period to spend the settlement payments under the SSI's Program Operations Manual System ("POMS") § 0110.630.[13]

On March 16, 2011, Donald Medearis, a staff attorney at Bay Area Legal Aid, sent a letter to the SSA.[14] He said that "under POMS SI 01130.630, the[] checks, some that were for the replacement of lost resources, should not be treated as a resource for 9 months from the date of their receipt.[15] "Since [the plaintiff] [was] still in the grace period for the second replacement check received in October 2010," she had until June 2011 to spend the rest of the second check to get below the resource limit.[16] Mr. Medearis said the plaintiff would file an appeal of the overpayment and a waiver request.[17]

The plaintiff filed a request for reconsideration and a second request for waiver of overpayment on April 12, 2011.[18] In her request for reconsideration, she wrote that she disagreed with the amount of the overpayment because she "received [her] first installment check (to replace items in a storage unit that were lost) in January 2009 and per POMS SI 01130.630 I am given a 9-month period in which that cash is not treated as a resource. Therefore, the overpayment period should not have started until October 2009, which reduces the amount of the overpayment."[19]

In the request for waiver of overpayment, the plaintiff checked a box next to the following statement: "The overpayment was not my fault and I cannot afford to pay the money back and/or it is unfair for some other reason."[20] The plaintiff did not think she was at fault for causing the

---

[12] AR 145.

[13] *Id.*

[14] AR 233.

[15] *Id.*

[16] *Id.*

[17] AR 233–34.

[18] AR 145.

[19] AR 145–46.

[20] AR 235.

overpayment or accepting the money because, based on her review of the "SSI Spotlight" webpage, she thought that "cash received for the purpose of replacing an excluded resource that is lost, damaged, or stolen" was exempt from the resource limit "forever."[21] She did not think that this exemption was for a limited (nine-month) period of time. "Furthermore," she wrote, "since the cash to replace the lost items was, per the SSI Spotlight, not counted as a resource, I thought I had no obligation to report it."[22]

On May 10, 2011, the SSA issued a notice informing the plaintiff that it had already applied the nine-month exemption period to its calculation of her overpayment and affirming the earlier overpayment decision. [23]

On June 13, 2011, Mr. Medearis sent another letter to the SSA requesting an extension of the initial nine-month exemption period for the October 2010 insurance payment.[24] The plaintiff had "several surgeries requiring hospitalization" over the previous months, which prevented her from repairing or replacing the excluded resources.[25] He requested an extension through March 2012.[26]

On June 29, 2011, the SSA issued a billing statement showing that the plaintiff owed $16,100 in overpayments.[27] The SSA issued another notice reflecting the $16,100 balance on August 1, 2011.[28] In September 2011, the SSA began withholding $83.04 from the plaintiff's monthly SSI benefits "to get back money [she was] overpaid."[29] This reduced her monthly SSI benefit amount to $747.36.[30]

---

[21] *Id.*

[22] AR 236.

[23] AR 147.

[24] AR 246.

[25] AR 247.

[26] *Id.*

[27] AR 164.

[28] AR 176.

[29] AR 181.

[30] *Id.*

In September 2011, the SSA denied the plaintiff's applications for waiver of overpayment.[31] The SSA reduced the withholding amount on her benefits to $20.00 per month (the amount the SSA determined she could afford).[32] The plaintiff's balance at the time of this reduction was $15,255.[33]

## 2. ALJ Hearing – November 8, 2012

On November 8, 2012, ALJ Judson Scott held a hearing.[34] The plaintiff had an attorney before the hearing, but he withdrew in June 2012.[35] The ALJ confirmed that the plaintiff wanted to proceed without representation.[36]

The ALJ said the original amount of the overpayment was $21,443 and the period of overpayment was January 2009 through February 2011.[37] At the time of the hearing, the balance was $16,100.[38]

The plaintiff testified that several years before the hearing, she put all of her possessions into a storage unit.[39] The storage facility made "a bookkeeping error and [unbeknownst] to [the plaintiff] sold all of her possessions."[40] In January 2009, the plaintiff received $7,849.23 as "part of [her] claim" and deposited the money into her bank account.[41] She testified that she "called SSA [] to report the income, and to ask them about the exemption, and if the resource was excludable."[42]

---

[31] AR 188.

[32] AR 189.

[33] Id.

[34] AR 379.

[35] AR 381.

[36] AR 381–82.

[37] AR 381.

[38] AR 387. It is not clear from the record whether the difference in amounts was because the plaintiff paid down the balance or because the first amount was in error. The ALJ used the $16,100 amount.

[39] AR 388.

[40] Id.

[41] Id.

[42] AR 389.

She directed the ALJ to a copy of a webpage on the SSI website titled "SSA Spotlight."[43] She said

the page listed "excludable resources" and summarized it as follows:

> The plaintiff: So, it says that state or local relocation assistant payments are not counted for nine months. And it also says crime victim's assistance is not counted for nine months. It – then it goes on. Earned income tax credit payments are not counted for nine months . . . It says grants, scholarships, fellowships or gifts used for tuition and educational expenses are not counted for nine months. It says cash received for purpose of replacing an excluded resource that is lost, damaged or stolen, nothing
>
> ALJ: And then it says nine months?
>
> The plaintiff: It does not say nine months.
>
> ALJ: All right.[44]

The plaintiff testified that she looked at the list and "said, well, here's cash received for the

purpose of replacing an excluded resource, that's my issue, that is lost, damaged or stolen."[45]

While she was on the phone with an SSA representative, she "read the Spotlight to him just as I

did here. . . And he agreed that if it didn't say nine months, it didn't mean nine months. And I

assumed that with good reason, that it meant that a nine-month exemption didn't apply."[46] She

directed the ALJ to a copy of the same webpage but from 2012.[47] That version specified that

"[c]ash received for the purpose of replacing a[n] excluded resource that is lost, damaged or stolen

is not counted for nine months."[48]

The plaintiff testified that she "made no misleading or false statements to get this money. It

was given to me to replace my property that had been lost. I didn't intend to conceal it in any way

---

[43] AR 386, 390.

[44] AR 391.

[45] *Id.*

[46] AR 392.

[47] *Id.*

[48] *Id.*

. . . this was for the nine months ending in October – ending in September, beginning in October, that it was an excludable – excluded resource. So that period was not counted."[49]

The plaintiff referred to a letter she received from the SSA dated September 6, 2011.[50] That letter stated that the SSA's decision that she was overpaid was correct and they could not "waive the collection of your overpayment of $15,255."[51] The ALJ asked if this amount, as opposed to the $21,443, was the correct amount of her overpayment, and she said it was.[52]

The ALJ asked the plaintiff if she was paying back the overcharge, and she said that she was paying $20 a month in the form of a deduction from her benefits.[53] The deduction was a great hardship because she could not pay for heat after paying for rent, food, and transportation.[54]

The ALJ referred to the plaintiff's waiver request and noted that she did not complete "the financial part of it."[55] He said that the only way to evaluate whether the plaintiff could pay back the overpayment (and thus whether she qualified for a waiver) would be to know what her income and expenses were.[56] The plaintiff said that her attorney crossed off those sections.[57]

The ALJ asked the plaintiff what she did with the money she received from her lawsuit.[58] She said the money she received in October 2010 was all spent down in nine months and was not at issue.[59] She said that she spent the January 2009 payment by buying a car and household items "to replace the things that were lost in the storage unit."[60] The plaintiff said, "I did have the income

---

[49] AR 393.

[50] AR 394.

[51] Id.

[52] AR 394–95.

[53] AR 403–04.

[54] AR 404.

[55] AR 405–06.

[56] AR 406.

[57] Id.

[58] AR 407.

[59] Id.

[60] Id.

beyond nine months. I don't . . . dispute that in any way. But it was not my fault. . . I had some misrepresentation both by the SSA Spotlight online, and by the SSA representative that I spoke to on the phone when I reported it."[61]

The plaintiff informed the ALJ that she had impairments that he should consider.[62] First, she argued that the injuries to her leg caused by her 2009 car crash prevented her from "going shopping and spending money."[63] The ALJ pointed out that she had nine months to spend down the money before the accident and that she was able to spend "a larger amount down more quickly."[64] The plaintiff said that she was able to spend the second amount more quickly because the rules were explained to her by her attorney.[65]

The plaintiff also said was diagnosed with obsessive-compulsive disorder ("OCD") in 2007.[66] Her OCD was "related to money and hoarding of money" and so she "wanted to keep the money in a very pathological way."[67] The court did not have records of that, and the psychiatric evaluation associated with her SSI benefits did not mention OCD.[68] The ALJ said that even if the plaintiff had money in the bank because of "hoarding or for some other reason, [she] still had the money in the bank. . . . And then you were also getting SSI payments which you weren't entitled to because you had the money in the bank for whatever reason. And the rules in terms of the

---

[61] AR 410.

[62] AR 410–11.

[63] AR 415. The record contains a letter from Dr. Matthew Varghese at St. Stephen's Hospital in Delhi, India, dated October 22, 2009. The letter confirms that the plaintiff was in a car accident on September 27, 2009. He reported that she sustained a head injury and a fractured femur and suffered from sepsis. He said management of the fracture would take "up to one year or more [] of reconstructive procedures." (AR 332).

[64] AR 415.

[65] Id.

[66] AR 416. The record contains a report from an August 2011 psychiatric examination related to continuation of the plaintiff's SSI benefits. The plaintiff alleged post-traumatic stress disorder, depression, and anxiety. Her anxiety increased after her car accident. (AR 262–64).

[67] AR 417.

[68] AR 416.

overpayment and whether you're eligible or not don't have anything to do with whether you're obsessive compulsive or not."[69]

### 3. ALJ Decision Issued December 17, 2012

The ALJ issued an unfavorable decision in December 2012.[70] The ALJ held that the plaintiff was overpaid $16,344.44 in benefits between January 1, 2009 and February 1, 2009.[71] He said the SSA was mistaken in initially alleging overpayment of $21,443, but ultimately the agency "correctly excluded the insurance replacement monies from January 2009 through September 2009 and again from October 2010 through April 2011."[72] According to the ALJ, the correct amount was $16,344.44.[73]

The ALJ held that the plaintiff was at fault for causing the overpayment.[74] He found the plaintiff's testimony that she was "unable to spend down the first installment of her lawsuit recovery proceeds within the 9-month grace period because of her physical limitations and lack of mobility . . . not credible, as the motor vehicle accident did not occur until after the expiration of" the grace period.[75] Additionally, the plaintiff "was able to spend down the second and larger amount of money within [nine months] despite having the same physical limitations."[76]

The ALJ also rejected the plaintiff's argument that her obsessive-compulsive disorder caused her to hoard the money because "she did not provide any medical documentation to support" that contention.[77] During a psychological-consultative evaluation undertaken in connection with her

---

[69] AR 418.

[70] AR 275.

[71] AR 280.

[72] *Id.*

[73] AR 280–81.

[74] AR 281.

[75] *Id.*

[76] *Id.*

[77] *Id.*

ongoing disability review, she "only complained of PTSD and did not mention any difficulties associated with OCD."[78]

The ALJ held that recovery of the overpayment was not waived and increased the amount of the withholding, finding that it was "reasonable to withhold the legally permissible 10% of the plaintiff's SSI benefits until the overpayment [was] recouped in full."[79]

### 4. Appeals Council

In February 2013, the plaintiff requested review of the ALJ's decision.[80] She claimed that the ALJ "corrupt[ed] her oral testimony in his decision," committed "errors in applying the law," and relied on "unsubstantiated evidence."[81]

The Appeals Council vacated the ALJ's decision and remanded the case for further proceedings because (1) the conflicting overpayment periods in the SSA notices warranted clarification of the overpayment period and amount, and (2) the ALJ did not make his fault determination in accordance with 20 CFR § 416.552 and POMS SI § 02260.025.C.[82]

The Appeals Council held that on remand, the ALJ must (1) determine the period for which the plaintiff received the overpayment, the amount of the overpayment, and the cause of the overpayment, and (2) consider whether and to what extent the plaintiff's mental impairments could have impacted her ability to understand the effect of the excess resources and her reporting obligations.[83] Addressing the plaintiff's complaints about the ALJ's behavior towards her at the hearing, the Appeals Council found that the ALJ did not abuse his discretion under 20 CFR § 416.1470.[84]

---

[78] Id.

[79] Id.

[80] AR 268.

[81] Id.

[82] AR 285–86.

[83] AR 286–87.

[84] AR 286.

### 5. Events Between the First and Second Hearings

On November 25, 2014, the plaintiff wrote to the Office of Disability Adjudication and Review in San Francisco requesting that she be assigned to a different ALJ.[85] She cited "fear of reprisal" as her reason for wanting reassignment and wrote that she had "already prejudiced [herself] by reporting Judge Scott's misconduct."[86]

On February 2, 2015, Frederick George Craw was appointed to represent the plaintiff.[87] Mr. Craw submitted a formal recusal request.[88] He listed ten reasons for the request:

1. You repeatedly misstated her responses to your hearing questions;

2. You cut off her hearing testimony;

3. You "talked over" and interrupted her when she was testifying;

4. You rushed through the hearing because you said you had a crowded hearing schedule;

5. You used a loud and rude tone of voice when you addressed her;

6. You suggested more than once that she was not telling the truth;

7. You exhibited through word, gesture, tone and volume of voice a hostility to her claim and/or to her personally;

8. In drafting your Unfavorable Decision, you did not follow the rules and procedures required for an adjudication of an Overpayment issue;

9. In drafting your Unfavorable Decision, you did not follow the rules and procedures required for an adjudication of a Request for Waiver of repayment issue; and, finally

10. When you drafted your Unfavorable Decision, you exhorted the Administration to increase *fourfold* the repayment schedule that she was already laboring under at cost to her abilities to meet her housing and living costs.[89]

In March 2015, the plaintiff filled out another Request for Waiver of Overpayment Recovery.[90] She said she used the overpaid benefits "to pay for food and rent."[91] She reported that

---

[85] AR 302.

[86] *Id.*

[87] AR 313.

[88] AR 331.

[89] *Id.* (emphasis in original).

[90] AR 322.

"there was misinformation on the SSA website" and that it was not her fault that she was overpaid.[92] She did not inform the SSA about the insurance payments because the "SSA website indicated erroneously that the check that I received was an excludable resource."[93] She wrote that she should not have to return the amount because "the amount ha[d] not been determined," she was "not at fault, and repayment would present a hardship and defeat the purpose of Title XI."[94] Her assets totaled $765.49 plus a 2010 Honda Fit valued at $3,000.[95] She was not employed.[96] Her monthly SSI payment was $869 and monthly expenses were $870.[97]

### 6. ALJ Hearing – April 1, 2015

On April 1, 2015 ALJ Scott held a second hearing.[98] The plaintiff, represented by Mr. Craw, testified at the hearing.[99] The ALJ stated that the plaintiff's overpayment balance as of the date of the hearing was $15,119.32.[100]

Mr. Craw argued that the court should find that the plaintiff had "good cause" for a nine-month extension on the exemption period for her first insurance payment (because of her September 2009 car accident), even though she did not apply for an extension.[101] Retroactively applying this extension would mean that the plaintiff was only overpaid from August 2010 to February 2011, bringing the total overpayment to $5,915.[102]

---

[91] AR 323.
[92] *Id.*
[93] *Id.*
[94] AR 324.
[95] AR 325.
[96] AR 326.
[97] AR 327.
[98] AR 346. ALJ Scott declined to recuse himself from the case. AR 351.
[99] AR 346.
[100] AR 350.
[101] AR 361.
[102] AR 365.

The ALJ discussed the proceedings with the plaintiff to date.[103] He said that when the original request was made for the plaintiff to provide a financial statement, she "refused to fill in any financial data."[104] She also was asked about providing further information, and she "didn't do that either."[105] The ALJ summarized the plaintiff's argument about the "Spotlight" page:

> [Y]ou sort of though well, gee, I wonder if this is one of those things I have to report, and unfortunately you read it wrong, or made the wrong decision, or jumped to a conclusion which may have been perfectly reasonable but it was the wrong conclusion, that you didn't have to report it. So you didn't tell them about that. And the difficulty with that is that I'm supposed to make a decision about fault before we get to a decision about waiver. And fault doesn't mean that you're a bad person but it means are you blameless, or is there something – essentially another way to phrase it is the but for test.
>
> If you had done everything the way it was supposed to have happened, would we be in this position now. In other words, if you had reported it, would we be in this position. The answer is no we wouldn't.[106]

Mr. Craw, referring to the Spotlight page, argued that "a reasonable layperson reading this would say, oh, okay, that doesn't count. And this is a Social Security document. It wasn't something she picked up from one of those online disability programs."[107]

The ALJ said the plaintiff "didn't check with anybody else" after reading the website.[108] The plaintiff said she did "make a call to SSA, and [] had a conversation with a representative, and [] read [the webpage to him]. And he said well, I agree with you. If it doesn't say that, then that's the case. So he said that he would do research about it and get back to me, and then I never heard from him again."[109] The ALJ said "unfortunately that was a lie" and that "the real issue is when [the plaintiff] got her benefits in the beginning, it told [her] in all the papers [she] signed, said that [she

---

[103] AR 369.

[104] *Id.*

[105] AR 370.

[106] AR 370–71.

[107] AR 372.

[108] *Id.*

[109] *Id.*

had] to report anything that changes."[110] The plaintiff reiterated that she did report the payments, and the ALJ said that there was no documentation "of the fact that that occurred."[111] He said, "because you have the burden of proof on these kinds of things, I have to look at whether you can prove what you say. And you're a nice lady and you've told me that. I understand that, but we don't have any proof of it."[112]

### 7. ALJ Decision

The ALJ issued an unfavorable decision on June 11, 2015.[113] The ALJ held that the plaintiff "was overpaid benefits because she had excess resources from June 1, 2009 through September 30, 2009, December 1, 2009 through September 31, 2010 and November 1, 2010 through February 28, 2011 due to proceeds from two lawsuits she won against a storage facility."[114] The total amount of the overpayment was $16,100.[115]

The ALJ held that the plaintiff's argument that she was unable to spend down the first settlement payment because of her September 2009 car accident was "not credible" because the accident occurred "only four days prior to the expiration" of the exclusion period and she was out of the country, implying that she "had no intention to spend down the lawsuit proceeds."[116] He added that the plaintiff was "able to spend down the subsequent and larger amount of money within 9 months."[117]

The ALJ held that the plaintiff was at fault in causing the overpayment.[118] He rejected the plaintiff's argument from the prior hearing that her OCD caused her to "hoard" the money because

---

[110] AR 372–73.

[111] AR 373.

[112] AR 374.

[113] AR 23.

[114] AR 28.

[115] *Id.*

[116] AR 30.

[117] *Id.*

[118] *Id.*

"she did not provide any medical documentation to support this contention" and because she "did not mention any difficulties associated with OCD" in a psychological-consultative examination in August 2011.[119] Additionally, the plaintiff's "alleged OCD" did not prevent her from spending down the second installment of her lawsuit recovery proceeds in less than nine months.[120]

The ALJ also rejected the plaintiff's argument that after "conduct[ing] her own research of Social Security Rules," she "decided that the money from her lawsuit was an 'excusable resource' that she did not have to report."[121] The ALJ held that the claimant's testimony confirmed "that she willfully failed to accurately and timely report the value of her resources."[122] He found that "the fact that [the plaintiff] conducted research demonstrate[d] that she knew that there was an issue with reporting that income, and made a deliberate decision about her reporting responsibilities."[123] Finally, the ALJ said that "the contradictory shift of argument and factual statements made under oath at the two consecutive hearings before [him] [were] detrimental to claimant's credibility as to her motivation in failing to report this income."[124]

Because he found the plaintiff at fault, the ALJ did not consider whether recovery was against equity and good conscience.[125] He concluded that recovery of the overpayment was not waived and that 10% of the plaintiff's SSI benefits "should continue to be withheld until the overpayment is recouped in full."[126]

---

[119] AR 31.

[120] *Id.*

[121] *Id.*

[122] *Id.*

[123] *Id.*

[124] *Id.*

[125] *Id.*

[126] AR 32.

**8. Request for Review and Appeals Council Denial**

On August 12, 2015, the plaintiff filed a Request for Review of Hearing.[127] She stated that "[t]he Administrative Law Judge denied the claimant a fair hearing on the evidence, failed to comply with the Appeals Council's 7/12/14 Order of Remand and unfairly attacked and minimized the claimant's credibility."[128] She requested an extension of time to submit additional evidence, which the council granted.[129]

On October 15, 2015, the plaintiff submitted additional evidence and legal argument to the Appeals Council.[130] She argued that the ALJ's decision reflected "an inaccurate assessment of the period and amount of overpayment at issue."[131] Specifically, the ALJ's "assessment of the period of the overpayment [was] confusing and [did] not offer a clear impression of his grasp of the case's issues" and "his calculations of the amount of the overpayment" were "simply wrong."[132] The plaintiff argued that the ALJ's finding that she was at fault was based on "his subjective assessment that [she was] a liar."[133] Despite being ordered to consider the extent to which the plaintiff's mental impairments could have impacted her ability to understand the effect of her resources on her supplemental security income payments and reporting obligations, the ALJ "simply found that the claimant's explanations of her mental conditions and behavior were untrue and not supported by his review of the case."[134] The plaintiff said that the ALJ "failed to consider the devastating impact the crippling accident of September 27, 2009 had on her already compromised mental condition and her abilities to attend to matters involving the 'spending down' of an insurance settlement."[135]

---

[127] AR 334.

[128] *Id.*

[129] AR 335–36, 338.

[130] AR 338.

[131] AR 339.

[132] *Id.*

[133] AR 340.

[134] AR 341.

[135] AR 345.

The Appeals Council denied the plaintiff's request to review the ALJ's decision on June 27, 2017.[136]

The plaintiff timely filed this complaint and was granted *in forma pauperis* status.[137] The plaintiff filed a motion for summary judgment, and the government filed a cross-motion for summary judgment.[138]

## STANDARD OF REVIEW

A federal district court may not disturb the Commissioner's denial of a waiver of overpayment request if the decision is supported by substantial evidence and without legal error. 42 U.S.C. § 405(g); *Hill v. Astrue,* 698 F.3d 1153, 1158 (9th Cir. 2012). Considering the administrative record as a whole, "'[s]ubstantial evidence' means more than a scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. SSA,* 466 F.3d 880, 882 (9th Cir. 2006); *Sandgathe v. Chater,* 108 F.3d 978, 980 (9th Cir. 1997). "Where the evidence is susceptible to more than one rational interpretation, and the ALJ has provided a rational interpretation, the district court must uphold the decision of the ALJ. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).

## DISCUSSION

The plaintiff moves for summary judgment on the grounds that that (1) she was not at fault in causing the overpayment, (2) SSA policy supports a finding that the she was not at fault, and (3) the ALJ wrongfully discredited her testimony about her interpretation of the SSA website and applied the wrong legal standard.[139] She seeks a waiver of collection pursuant to 20 CFR § 416.553 and asks that any previously collected amounts be returned to her.[140]

---

[136] AR 6.

[137] Compl. – ECF No. 3; Order – ECF No. 6.

[138] Mot. – ECF No. 17; Cross-Mot. – ECF No. 26.

[139] Mot. – ECF No. 17 at 3–8.

[140] *Id.* at 7.

The government counters that the ALJ properly complied with the requirements pursuant to 20 CFR §§ 416.550, 416.552 and POMS 02260.35 in finding that the plaintiff "was at fault because she understood the reporting requirements and had knowledge that [her income] should be reported but did not take action to comply with the reporting requirements."[141]

The court holds that the ALJ's decision — that the plaintiff was at fault and was not entitled to a waiver — is not supported by substantial evidence and does not comply with SSA regulations and policy. The court grants the plaintiff's motion for summary judgment and remands the case for further proceedings consistent with this order.

## 1. Legal Standard

Under Section 404(a) of the Social Security Act, the Commissioner may recover overpaid disability-insurance benefits. 42 U.S.C. § 404(a)(1)(A). A claimant may obtain a waiver of the overpayment amount if the Commissioner finds that the claimant was without fault and that repayment would either defeat the purposes of the Social Security Act or would be against equity and good conscience. 42 U.S.C. § 404(b); 20 C.F.R. § 404.506(a); *Quinlivan v. Sullivan*, 916 F.2d 524, 526 (9th Cir. 1990).

An overpaid individual is at fault if the overpayment was caused by: "(1) an incorrect statement made by the individual that he knew or should have known to be incorrect; (2) failure to furnish information that he knew or should have known to be material; or (3) acceptance of a payment that he either knew or should have been expected to know was incorrect." *McCarthy v. Apfel,* 221 F.3d 1119, 1126 (9th Cir. 2000) (citing 20 C.F.R. § 404.507). "The overpaid individual bears the burden of proving that [s]he was without fault." *Id.* (citing *Anderson v. Sullivan*, 914 F.2d 1121, 1122 (9th Cir. 1990)).

The fault inquiry is "highly subjective, highly individualized, and highly dependent on the interaction between the intentions and state of mind of the [plaintiff] and the peculiar

---

[141] Cross-Mot. – ECF No. 26 at 7.

circumstances of [her] situation." *Elliott v. Weinberger,* 564 F.2d 1219, 1233 (9th Cir. 1977), *aff'd in part, rec'd in part on other grounds sub nom. Califano v. Yamasaki*, 442 U.S. 682, 687 (1979). To determine whether a plaintiff is at fault, the Commissioner must consider "all the pertinent circumstances surrounding the overpayment" and any "physical, mental, educational, or linguistic limitations the individual [plaintiff] may have." 20 C.F.R. § 416.552. The "fault determination requires a reasonable person to be viewed in the claimant's own circumstances and with whatever mental and physical limitations the claimant might have." *Harrison v. Heckler,* 746 F.2d 480, 482 (9th Cir. 1984).

## 2. The ALJ's Fault Determination is Not Supported by Substantial Evidence

The plaintiff argues that she was not at fault for the overpayment because she relied on misleading information published by the SSA.[142] Specifically, the SSA website lists resources that an individual may exclude when counting their total resources.[143] After each resource, the phrase "not counted for nine months" appears at the end.[144] The phrase "not counted for nine months" appears on five of the nine listed exclusions.[145] Notably, this phrase does not appear at the end of the category "cash received for the purpose of replacing an excluded resource (for example, a house) that is lost, damaged, or stolen."[146] This information led the plaintiff to believe that the insurance payments that she received were not subject to the nine-month exemption period or the SSA reporting requirements.[147]

---

[142] Mot. – ECF No. 17 at 3.

[143] AR 259.

[144] Mot. – ECF No. 17 at 3; AR 259.

[145] AR 259.

[146] Mot. – ECF No. 17 at 3.

[147] *Id.* at 3–4.

The government argues that the plaintiff's review of the SSI website demonstrates that she was "aware and knew that she had to report the excess income and continued to receive SSI payments" and was thus at fault for the overpayments.[148]

The ALJ's fault determination is not supported by substantial evidence.

Regarding the plaintiff's testimony, the ALJ wrote:

> At the prior hearing, the claimant argued that she was diagnosed with obsessive-compulsive disorder (OCD) in 2007, which causes her to hoard money. Yet, she did not provide any medical documentation to support this contention. Further, at the more recent psychological consultative evaluation undertaken in August 2011 in connection with a continuing disability review, the claimant was diagnosed with depression and post-traumatic stress disorder (PTSD) only. In fact, at the examination the claimant only complained of PTSD and did not mention any difficulties associated with OCD. Moreover, she was able to spend down the second, later installment of her lawsuit recovery proceeds in less than 9 months despite her alleged OCD.
>
> At the current hearing, the claimant reported that she had conducted her own research of Social Security rules when she received the two lawsuit payments and decided that the money from her lawsuit was an "excludable resource" that she did not have to report. The claimant's testimony confirms that she willfully failed to accurately and timely report the value of her resources. Further, the fact that she conducted said research demonstrates that she knew that there was an issue with reporting that income, and made a deliberate decision about her reporting responsibilities. Further, I find that the contradictory shift of argument and factual statements made under oath at the two consecutive hearings before me is detrimental to claimant's credibility as to her motivation in failing to report this income.[149]

"An ALJ's rejection of a claimant's testimony must be accompanied by a specific finding to that effect, supported by a 'specific, cogent reason for the disbelief.'" *Redfern v. Berryhill*, No. 15-cv-03883-JSC, 2017 WL 818856 at *5 (N.D. Cal. Mar. 2, 2017) (citing *Lewin v. Schweiker*, 654 F.2d 631, 635–35 (9th Cir. 1981).

The ALJ's discussion of the plaintiff's testimony misconstrues the record. The plaintiff's version of events is consistent across the entire record. She claims that she (1) received the settlement payment, (2) consulted the SSA website and noted that the category her payment

---

[148] Cross-Mot. – ECF No. 26 at 6.

[149] AR 31.

belonged to did not have a nine-month time limit, (3) called and spoke with someone at the SSA to clarify her understanding of the SSA Spotlight page, and (4) determined that it was not required that she spend it in nine months. This version of events is reflected in her testimony from both hearings and in her written submissions to the SSA.[150] The ALJ's suggestion that the plaintiff made one argument at her first hearing (that her OCD prevented her from spending the money in nine months) and a different argument at her second hearing (that she misunderstood the website) is not an accurate reflection of the record. The court does not find the "contradictory shift of argument and factual statements made under oath" that the ALJ referenced.

Also, during both hearings and in both of his opinions, the ALJ focused on the fact that the plaintiff was able to pay down the second, larger payment within the nine-month period.[151] This detail is easily explained: by the time she received the second payment, the rules had been "explained to [her] by [her] attorney."[152] That the plaintiff abided by the rules once she understood them supports her argument that the SSA website initially misled her. Thus, the fact that the plaintiff spent the second payment within nine months was not substantial evidence that supported the ALJ's finding that she was at fault for the overpayment.

### 3. The ALJ's Fault Determination is Inconsistent with SSA Regulations and Policy

The plaintiff argues that the SSA's internal policies, published in its "Program Operations Manual System" ("POMS"), support a finding that she is not at fault.[153] The government argues that the plaintiff was aware of the reporting requirements and did not act to comply with them.[154] The court holds that the ALJ's opinion was inconsistent with SSA regulations and policy.

---

[150] AR 391, 410 (first hearing), 372 (second hearing); *see, e.g.,* AR 154, 236, 241, 268, 323.

[151] AR 281 (first opinion), AR 30 (second opinion).

[152] AR 415.

[153] Mot. – ECF No. 17 at 5–6.

[154] Cross-Mot. – ECF No. 26 at 7.

"In determining whether an individual is without fault, 'the Social Security Administration considers the individual's understanding of the reporting requirements, the agreement to report events affecting payments, knowledge of the occurrence of events that should have been reported, efforts to comply with the reporting requirements, opportunities to comply with the reporting requirements, understanding of the obligation to return checks which were not due, and ability to comply with the reporting requirements." *Conley v. Berryhill*, No. 13-cv-04807-JSC, 2017 WL 3335752, at *7 (N.D. Cal. Aug. 4, 2017) (quoting 20 C.F.R. § 416.552). "[A]n individual may not be at fault for an overpayment if she "'reli[es] upon erroneous information from an official source within the Social Security Administration (or other governmental agency which the individual had reasonable cause to believe was connected with the administration of benefits under Title II of the Act) with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto.'" 20 C.F.R. § 404.510(b).

As discussed above, the record contains significant testimonial evidence that the plaintiff relied on the "SSA Spotlight" page in determining whether the nine-month exclusion period applied to her settlement payment. The ALJ erred by not crediting the plaintiff's testimony and written evidence about her reliance on the site.

The ALJ did not abide by the SSA's POMS. In fault determinations, POMS provides that "[i]f the evidence clearly shows the individual did not understand and comply with reporting responsibilities, that individual can usually be found without fault. Resolve any doubt in favor of the individual." POMS § GN 02250.005(C)(1). There is substantial evidence in the record indicating that the plaintiff did not understand her reporting responsibilities, (even after consulting the SSA website and calling the agency), and this is bolstered by the fact, acknowledged by the ALJ, that once she understood her responsibilities, she complied with the regulations and spent down the second settlement payment within the nine-month exclusion period.

The ALJ's decision is undermined by law and policy, and the court reverses the decision and remands for further proceedings consistent with this order.

**CONCLUSION**

The court grants the plaintiff's motion for summary judgment, denies the defendant's cross-motion for summary judgment, and remands the case for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: March 26, 2019

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California